UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, <br><br> Plaintiff, <br><br> v. <br><br> CENTURY INDEMNITY COMPANY, <br><br> Defendants. | Civil Action No. 18-cv-12041 |
| CENTURY INDEMNITY COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, <br><br> Defendants. | Civil Action No. 19-cv-11056 |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                 **March 6, 2020**

**I.     Introduction**

Certain Underwriters at Lloyd's, London ("Underwriters") seek to enforce the Court's judgment confirming an arbitration award resulting from an arbitration between Underwriters and Century Indemnity Company ("Century"). D. 20. The motion also seeks to enjoin a separate arbitration demand by Century, arguing that the arbitration demand seeks to circumvent the

1

Federal Arbitration Act's ("FAA") exclusive means to challenge the confirmed arbitration award and that it is an attempt to re-arbitrate the same claims resolved in the confirmed arbitration. Id. In a separate action, Underwriters move to dismiss Century's petition to compel arbitration. Century D. 14.[1]

For the reasons stated below, the Court ALLOWS in part Underwriters' motion to the extent that it seeks to enforce the judgment and DENIES in part the motion to the extent that it seeks to enjoin the arbitration now sought by Century. Accordingly, the Court also DENIES Underwriters' motion to dismiss Century's petition to compel arbitration.

## II.     Standard of Review

The "FAA compels judicial enforcement of . . . written arbitration agreements." Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 111 (2001). Under the FAA, a "written provision in any . . . contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has stated that "the FAA was designed to promote arbitration," AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 345 (2011), and "[s]ection 2 embodies the national policy favoring arbitration," Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006).

A party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order

---

[1] Century filed its petition to compel arbitration against Underwriters in a separate action, Civil Action No. 19-cv-11056, distinct from the action to confirm the initial arbitration award. Civil Action 18-cv-12041. The two cases present largely overlapping facts and were consolidated for consideration, D. 39, thus, the Court will discuss them here together. Citations to docket entries in Civil Action No. 19-cv-11056 will be referred to as "Century D."

directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

"A party who is seeking to compel arbitration must demonstrate 'that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope.'" Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino, 640 F.3d 471, 474 (1st Cir. 2011) (quoting Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 638 F.3d 367, 375 (1st Cir. 2011)). "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218 (1985) (emphasis in original).

### III. Factual Allegations

#### A. The Reinsurance Agreements and Boy Scouts of America Claims

Underwriters provided reinsurance to Century under reinsurance contracts in effect between 1963 and 1970. D. 37 at 2; D. 45 at 3. The reinsurance contracts in effect from 1963 through 1967 were known as General Casualty Reinsurance Agreements and the contracts in effect from 1968 through 1970 were Blanket Excess of Loss Covers (together, the "Reinsurance Contracts"). D. 45 at 3. The Reinsurance Contracts require the parties to arbitrate all disputes. D. 37 at 2; D. 1-1 at Article XII; D. 1-2 at Article 22.

Century issued insurance policies to the Boy Scouts of America ("BSA") from the 1960s to the 1990s. D. 37 at 2. Beginning in the 1990s, BSA submitted multiple claims to Century arising out of allegations of sexual molestation committed by individuals associated with the organization. D. 37 at 2; D. 45 at 3-4. Century defended and indemnified BSA for those claims.

3

D. 37 at 2. In 1996, Century entered into a settlement agreement with BSA, referred to as the "First Encounter Agreement" ("FEA") whereby each molestation claim would be allocated under the Century policy in effect on the date when the first alleged act of molestation occurred such that all defense and indemnity payments for that claim would be paid under that policy. D. 37 at 2-3.

### B. Reinsurance Billings to Underwriters

In 2016, payments made by Century regarding the BSA claims implicated the Reinsurance Contracts. D. 37 at 3; D. 45 at 4. Century submitted numerous billings to Underwriters between 2016 and 2018. D. 45 at 4. Consistent with the FEA, Century allocated payments for each molestation claim to the policy in effect at the time the first act of molestation was alleged to have occurred. D. 37 at 3-4; D. 45 at 4. Century then accumulated the payments allocated to each policy period and billed them as a single "loss occurrence" under the Reinsurance Contract in effect at that time. Id. Underwriters declined to pay the billings because, according to Underwriters, the allocation of payments was "counterfactual," the FEA was "not the product of a reasonable and business-like investigation" and the accumulation of multiple claims into a single loss occurrence was "improper." D. 45 at 4-5.

### C. The Arbitration Award and Subsequent Billings

Century demanded arbitration to settle the billing dispute with Underwriters and a three-member arbitration panel was convened pursuant to the terms of the Reinsurance Contracts. D. 37 at 5; D. 45 at 5. Century requested that the arbitration panel issue an award requiring Underwriters to pay all outstanding bills and requiring them to pay any future billings related to BSA molestation claims. D. 37 at 5. Underwriters challenged Century's allocation of payments pursuant to the FEA, challenged Century's accumulation of payments under each policy into a single loss occurrence and claimed late notice. Id.

After a four-day evidentiary hearing (the "Arbitration"), the arbitration panel issued a unanimous one-page "Final Award" on May 4, 2018. D. 37 at 5; D. 45 at 5; D. 18 at 7. The Final Award stated, in relevant part:

> Century has not demonstrated that the First Encounter Agreement ("FEA") that it entered into with BSA is the product of a reasonable and business-like investigation. Accordingly, Underwriters are not bound to follow the FEA. And thus, Century's Billings for sexual molestation claims submitted in this matter under [the Reinsurance Contracts] are not covered by those treaties.

D. 18 at 7. The Final Award also stated that "[a]ll other requests for relief are denied." Id.

Approximately three months later, in August 2018, Century submitted new reinsurance billings based on the BSA molestation claims to Underwriters ("August 2018 Billings"). D. 37 at 6; D. 45 at 5. In the August 2018 Billings, Century no longer allocated payments based on the first date of alleged molestation pursuant to the FEA, but instead spread the payments across each of the Century policies in effect during the entire period of alleged abuse. D. 37 at 6. As it had done in the initial billings, Century then accumulated all of the payments allocated to each policy period into a single loss occurrence for billing under the Reinsurance Contracts. D. 37 at 6; D. 45-3. Underwriters opposed the submission of the August 2018 Billings and sought clarification from the arbitration panel. D. 37 at 6; D. 45 at 6. Specifically, Underwriters requested that the arbitration panel "issue a clarification that expressly precludes Century from re-billing BSA's sexual molestation claims to [the Reinsurance Contracts]." D. 38-5. The arbitration panel issued a "Clarification Award" (together with the Final Award, the "Arbitration Award") on August 28, 2018. D. 37 at 7; D. 45 at 6. The one-page Clarification Award stated that Century's claim for relief was based on "two inter-dependent theories" – the accumulation of claims as a single loss occurrence and the allocation of claims to the first date of alleged abuse. D. 18, Exh. 5. The

5

Clarification Award then noted that "[b]ecause of their inter-dependence, failure on either prong of Century's claim for relief would result in the failure of the billing in its entirety, as failure on one prong meant failure on the other" and went on to state that "the Panel unanimously accepted Underwriters' challenge to the FEA and, therefore, determined the billing failed in its entirety." Id. The Clarification Award noted that, upon determining that the billing failed in its entirety, "the Panel did not deem it necessary to address all other specific requests for relief and denied them." Id.

### D. Subsequent Proceedings

Following the issuance of the Clarification Award, Underwriters petitioned the Court for confirmation of the Arbitration Award. D. 1. Century did not oppose confirmation of the Arbitration Award. D. 37 at 7; D. 45 at 6. The Court confirmed the Arbitration Award and entered judgment on November 16, 2018. D. 19.

On November 9, 2018, after Underwriters refused to pay the August 2018 Billings, Century demanded arbitration pursuant to the arbitration clauses in the Reinsurance Agreements, D. 37 at 7, to which Underwriters did not agree. D. 45-4; D. 37 at 8. The parties stayed the arbitration demand to attempt to resolve their dispute but were unsuccessful. Id. The stay terminated on May 6, 2019 and Century filed a separate petition to compel arbitration pursuant to the November 9th demand. Century D. 1.

### IV. Procedural History

As noted above, the Court entered an order confirming the Arbitration Award on November 16, 2018 and entered judgment in accordance with the confirmation. D. 19. On May 6, 2019, Century instituted a separate action to compel arbitration against Underwriters. Century D. 1.

That same day, Underwriters moved to enforce the Court's judgment confirming the Arbitration Award and to enjoin the arbitration demand by Century regarding the August 2018 Billings and any future proceedings regarding the BSA Claims. D. 20. Underwriters then moved to dismiss Century's petition to compel arbitration regarding the August 2018 Billings on the grounds that (1) the action is duplicative of the original arbitration action; (2) the Court lacks jurisdiction because Century has not been "aggrieved by the alleged failure, neglect or refusal" of Underwriters to arbitrate; (3) Underwriters have named their arbitrators, rendering the action moot; and (4) the action is barred by the doctrine of res judicata based on the judgment entered in the prior arbitration between the parties. Century D. 14. The two separate actions were consolidated for consideration, D. 39, and, after a hearing, the Court took both matters under advisement. D. 46; Century D. 44.

**V.    Discussion**

    **A.    Preclusive Effect of the Arbitration Award is for the Arbitrator to Decide**

Underwriters argue that Century's demand for arbitration regarding the August 2018 Billings should be enjoined because it is an attempt to attack the Arbitration Award collaterally. D. 45 at 8-10. Century counters that they are not seeking to challenge the validity of the Arbitration Award, but, rather, that the Arbitration Award did not address the manner of billing in the August 2018 Billings and that they complied with the Arbitration Award in submitting the August 2018 Billings. D. 37 at 8-9. Century further argues that Underwriters are improperly asking the Court to determine the preclusive effect of the Arbitration Award on their demand for arbitration of the August 2018 Billings. D. 37 at 11-12.

"Res judicata applies with equal force to arbitration: 'a valid and final award by arbitration has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court.'" Hopkinton Drug, Inc. v. CaremarkPCS, LLC, 77 F.

Supp. 3d 237, 254 (D. Mass. 2015) (quoting Restatement (Second) of Judgments § 84(1)).  Courts have generally held that, if an underlying action is arbitrable, the preclusive effect of a prior arbitration on a subsequent arbitration is an arbitrable dispute.  See Grigsby & Assocs., Inc. v. M Sec. Inv., 664 F.3d 1350, 1353 (11th Cir. 2011) (noting that in the absence of an agreement to the contrary between the contracting parties, "res judicata is a question for the arbitrator"); Indep. Lift Truck Builders Union v. NACCO Materials Handling Grp., Inc., 202 F.3d 965, 968 (7th Cir. 2000) (noting that it is "well-established that 'the preclusive effect of the first arbitrator's decision is an issue for a later arbitrator to consider'") (quoting Bhd. of Maint. of Way Emps. v. Burlington N. R. Co., 24 F.3d 937, 940 (7th Cir. 1994))); Courier-Citizen Co. v. Bos. Electrotypers Union No. 11, Int'l Printing & Graphic Commc'ns Union of N. Am., 702 F.2d 273, 280 (1st Cir. 1983) (explaining that "[c]ourts have generally refused to rule on the precedential effect of an arbitration award on future awards, taking the position that the question is properly resolved through arbitration"); Bos. Shipping Ass'n, Inc. v. Int'l Longshoremen's Ass'n (AFL-CIO), 659 F.2d 1, 3 (1st Cir. 1981) (observing that "[w]hether the award can be given an effect akin to res judicata or stare decisis with regard to future disputes that may arise between the parties, neither the district court nor this court should decide" and "[i]f the parties do not agree, that issue itself is for arbitration" (quoting New Orleans S.S. Ass'n v. Gen. Longshore Workers, 626 F.2d 455, 468 (5th Cir. 1980)) (internal quotation marks omitted)).  Here, Century is seeking to determine whether the preclusive scope of the prior arbitration decision encompasses the August 2018 Billings that are no longer allocated pursuant to the terms of the FEA.  See D. 37 at 8-12.

The cases cited by Underwriters regarding impermissible collateral attacks on arbitration awards are distinguishable because, in each, the subsequent action in effect challenged the

8

arbitration proceedings. In <u>Corey v. New York Stock Exchange</u>, 691 F.2d 1205, 1208 (6th Cir. 1982), an investor whose complaint was dismissed by an arbitration panel brought an action against the New York Stock Exchange, which sponsored the arbitration, claiming that it violated rules of the arbitration panel selection process. <u>Id.</u> The court concluded that the action was an impermissible collateral attack on the arbitration award and that the proper avenue for relief was a challenge to the arbitration award under the grounds in the FAA. <u>Id.</u> at 1213. Similarly, in <u>Decker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 205 F.3d 906, 909-10 (6th Cir. 2000), a plaintiff brought an action alleging contract and tort claims based upon allegations that the defendant had hired the chair of the arbitration panel that presided over an arbitration between the two parties. <u>Id.</u> The court, citing <u>Corey</u>, determined that the action was an impermissible collateral attack on the arbitration proceedings and affirmed dismissal of the complaint and the grant of a motion to enjoin a second arbitration sought by plaintiff "to arbitrate the very same claims" brought in the suit. <u>Id.</u> at 911. In <u>Prudential Sec. v. Hornsby</u>, 865 F. Supp. 447, 448-49 (N. D. Ill. 1994), a brokerage client successfully arbitrated claims against a security company and later initiated another arbitration alleging that the security company had fraudulently concealed documents in the initial arbitration proceedings. <u>Id.</u> The court enjoined the later arbitration as an impermissible collateral attack on the initial arbitration. <u>Id.</u> at 453. Finally, in <u>Arrowood Indem. Co. v. Equitas Ins. Ltd.</u>, No. 13CV7680 DLC, 2015 WL 4597543, at *4-5 (S.D.N.Y. July 30, 2015), the court enjoined a second arbitration demanded by an insurer who participated in an arbitration with an insured and then, after the conclusion of the initial arbitration, argued that the insured had engaged in misconduct in that arbitration proceeding by withholding a document that supported the insurer's position in the initial arbitration. <u>Id.</u> The court noted that the second arbitration demand

improperly sought to avoid the time limitation on challenges to arbitration awards under the FAA based on "corruption, fraud, or undue means." Id. at *6. The issue here is not whether Century is seeking to attack the proceedings that resulted in the Arbitration Award, but whether the Arbitration Award precludes arbitration regarding the August 2018 Billings. As explained previously, the preclusive effect of an arbitration award is an arbitrable issue that is not for the Court to resolve.

Further, there is no indication in the Arbitration Award that it was intended to have a prospective effect over new billings. Derwin v. Gen. Dynamics Corp., 719 F.2d 484, 491 (1st Cir. 1983) (stating that "[o]nly where an arbitral award is both clearly intended to have a prospective effect and there is no colorable basis for denying the applicability of the existing award to a dispute at hand, will a court order compliance with the award rather than require the parties to proceed anew through the contract grievance procedure") (citing Boston Shipping Asso. v. International Longshoremen's Asso., 659 F.2d 1, 4 (1st Cir. 1981)). Although, as Underwriters note, the demand for arbitration regarding the August 2018 Billings involves the same molestation claims against the BSA and the same Reinsurance Contracts considered in the Arbitration, it is not clear that the Arbitration Award foreclosed submitting the reinsurance billings in the format presented in the August 2018 Billings. The Arbitration Award stated that the allocation of the claims pursuant to the terms of the FEA was improper and determined that the reinsurance billings failed on that basis alone. D. 18 at 7; see D. 18 at 9 (clarifying same). Although Underwriters argue that the Arbitration Award "rejected Century's position" regarding accumulation of losses into a single loss occurrence, this is not apparent as the Arbitration Award turned on the unreasonableness of the FEA in concluding that the billings were improper and then stated simply that, upon

determining that the billing failed on this basis, "the Panel did not deem it necessary to address all other specific requests for relief and denied them." D. 18 at 9; D. 45 at 10.

Additionally, and seemingly for the first time in their reply to Century's opposition to the motion to dismiss, Underwriters argue that New York state law should apply, which they argue would require the Court, and not an arbitrator, to resolve the issue of the preclusive effect of the Arbitration Award. Century D. 43 at 4. The Court is not persuaded by Underwriters' argument. See North River Ins. Co. v. Allstate Ins. Co., 866 F. Supp. 123, 128 (S.D.N.Y. 1994) (concluding that "state law does not determine what forum -- a court or arbitrators -- hears the merits of a dispute between parties and decides whether to give preclusive effect to a prior arbitration between parties" and that "arbitrability is determined by rules of federal law"). That is, even assuming that New York law applied, a determination of the preclusive effect of the Arbitration Award would remain an issue for the arbitrator, and not the court, to resolve. Sobral v. Burke, No. 651849/14, 2014 N.Y. Misc. LEXIS 4157, *9 (1st Dep't 2014) (stating that "New York law reserves for the arbitrator the issue of an arbitration award's preclusive effect on a subsequent arbitration arising out of the same arbitration agreement") (citing Falzone v. New York Cent. Mut. Fire Ins. Co., 939 N.E.2d 1197, 1199 (N.Y. 2010), Warner Bros. Records. Inc, v. PPX Enterprises, Inc., 7 A.D.3d 330, 330 (1st Dept 2004); Port Auth. of New York and New Jersey v. Port Auth. Police Sergeants Benev. Ass'n, 225 A.D.2d 503, 503 (1st Dept 1996)).

### B.     Motion to Dismiss Arbitration Demand

The FAA permits courts to order arbitration where a party has been "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration." 9 U.S.C. § 4. It is undisputed that the parties have a valid agreement for arbitration. See Century

D. 1, ¶ 1; see D. 45 at 5.  In support of their motion to dismiss Century's petition to compel arbitration of the August 2018 Billings, Underwriters argue that (1) Century's arbitration demand is not valid because it sought a single arbitration to resolve disputes under multiple contracts, which violates a prior order issued by the Eastern District of Pennsylvania[2]; (2) Century is not an "aggrieved" party because Underwriters have named their arbitrators; (3) to the extent Century's petition requests an order directing Underwriters to appoint an arbitrator, the petition is moot; and (4) the petition is barred by the doctrine of res judicata based on the issuance of the Arbitration Award.[3]  Century D. 15 at 11-18.  The Court has already addressed the applicability of the doctrine of res judicata to Century's demand for arbitration regarding the August 2018 Billings and has concluded that the application of the doctrine is an issue for the arbitrator.  The same principles discussed above apply in equal force to the motion to dismiss.

### 1. *Century is an "Aggrieved" Party Under the FAA*

Underwriters argue that Century's petition to compel arbitration must be denied because Century is not an "aggrieved" party and, thus, cannot seek relief from this Court under the FAA.  Century D. 15 at 13-14.  In particular, Underwriters claim that they have not "failed, neglected, or refused to name their arbitrators."  Id. at 13 (internal quotation marks omitted).  The FAA, however, states that a party is aggrieved and permitted to seek relief from a district court when the other party to the dispute "fail[s], neglect[s], or refuse[s] to arbitrate under a written agreement for arbitration."  9 U.S.C. § 4.  Underwriters have admitted that they responded to Century's demand

---

[2] Certain Underwriters at Lloyd's v. Century Indem. Co., No. 05-2809-2813, 2005 WL 1941652 (E. D. Pa. Aug. 1, 2005).

[3] Underwriters also argue that the petition should be dismissed based on the prior pending action before this Court.  Century D. 15 at 9-11.  Because the two actions have been consolidated for consideration, the Court declines to dismiss on this basis.  See D. 39.

for arbitration by stating that, "should the Court determine that further arbitration is warranted, Underwriters do not agree to proceed with a single consolidated arbitration" as requested in Century's demand for arbitration. Century D. 15 at 12. Although Underwriters have named four arbitrators based on their contention that there must be four separate arbitration proceedings, they have refused to proceed with arbitration in the manner prescribed in Century's demand for arbitration under the contracts. As such, Century is an "aggrieved" party pursuant to the FAA and the Court has jurisdiction to compel the parties to arbitrate. See Shearson Lehman Bros., Inc. v. Brady, 783 F. Supp. 1490, 1494 (D. Mass. 1991) (noting that, where a party stated that they were only willing to proceed with arbitration before the American Arbitration Association and not the other organizations listed in the arbitration provision, this could reasonably be viewed as a refusal to arbitrate pursuant to the FAA).

### 2. *The Petition to Compel Arbitration is Not Moot*

Underwriters additionally claim that Century's petition to compel arbitration is moot because Underwriters have named four arbitrators consistent with their position that there must be four separate arbitration proceedings. Century D. 15 at 14-15. In the petition to compel arbitration, Century sought an order directing Underwriters (1) "to appoint an arbitrator in response to Century's arbitration demand" and (2) "to work promptly with Century in appointing an umpire to complete the arbitration panel." Century D. 1 at 4. In appointing four separate arbitrators, Underwriters have yet to appoint an arbitrator in response to Century's demand for arbitration. As there is an ongoing dispute between the parties regarding the appointment of arbitrators, the petition to compel arbitration is not moot.

### 3. *Validity of the Petition to Compel Arbitration*

13

In response to Underwriters' contention that the petition to compel arbitration of the August 2018 Billings is invalid because it did not comply with a 2005 decision issued by the Eastern District of Pennsylvania, Century argues that the continuing validity of the decision is questionable based on subsequent case law and that, nevertheless, the decision has no bearing on the present dispute. Century D. 26 at 6. In the 2005 case, Century sought to consolidate disputes under multiple reinsurance contracts into a single arbitration. Certain Underwriters at Lloyd's, 2005 WL 1941652 at *1. The Eastern District of Pennsylvania ruled that the parties were required to proceed with separate arbitrations under each contract and were not permitted to consolidate the disputes in one arbitration because there was no explicit agreement between the parties to do so. Id. at *2. Century notes that this case addressed only some of the same reinsurance contracts at issue here and that other contracts at issue in the present arbitration demand were not at issue in the prior case. Century D. 26 at 6.

The First Circuit has addressed the issue of consolidation in a similar case whereby a union sought to consolidate disputes under three separate contracts with a supermarket into a single arbitration. Shaw's Supermarkets, Inc. v. United Food & Commer. Workers Union, Local 791, 321 F.3d 251, 252 (1st Cir. 2003). The supermarket opposed consolidation and the First Circuit, relying upon Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79 (2002), affirmed the district court's ruling that the issue of consolidation was for the arbitrator to resolve, stating that "[s]ince each of the three grievances is itself concededly arbitrable, we think the answer is clear . . . this is a procedural matter for the arbitrator." Id. at 254. The order issued by the Eastern District of Pennsylvania does not change this analysis as its applicability to the present petition to compel arbitration of the August 2018 Billings is a procedural issue for the arbitrator to resolve. See

14

Painewebber Inc. v. Elahi, 87 F.3d 589, 599 (1st Cir. 1996) (stating that "the signing of a valid agreement to arbitrate the merits of the subject matter in dispute presumptively pushes the parties across the 'arbitrability' threshold; we will then presume that other issues relating to the substance of the dispute or the procedures of arbitration are for the arbitrator").

Century argues that the Court should direct that two arbitration panels be formed because three of the four contracts at issue contain no qualification requirement for arbitrators, but the fourth contains an "executive officer" qualification requirement. Century D. 26 at 9. The Court declines to direct formation of two arbitration panels as this is a procedural matter for the arbitrator to decide. See Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 10 (1st Cir. 2005) (stating that "procedural issues, even if potentially dispositive, are left to the arbitrator; substantive questions about the kind of disputes intended for arbitration are reserved for the court, absent clear and unmistakable evidence to the contrary"); Allstate Ins. Co. v. Liberty Mut. Ins. Co., No. 11-cv-10415-RGS, 2011 WL 1897395, at *2 (D. Mass. May 19, 2011) (declining to resolve a dispute regarding the number of arbitration panels to convene and stating that "[i]f an arbitrability issue arises, it is presumptively for the court to decide; but issues other than 'arbitrability' are presumptively arbitrable, that is, for the arbitrator to decide") (internal quotation marks omitted). It will be up to the arbitrator to determine whether multiple arbitration panels should be formed.

## VI.    Conclusion

For the foregoing reasons, the Court ALLOWS in part Underwriters' motion to the extent it seeks to enforce the judgment and DENIES it in part to the extent it seeks to enjoin arbitration.

D. 20.  The Court DENIES Underwriters' motion to dismiss the petition to compel arbitration. Century D. 14.

**So Ordered.**

/s/ Denise J. Casper<br>United States District Judge